UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WAYNE DARREN NEWTON, | Case No. 11-CV-1499 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| OFFICER RICHARD WALKER, in his individual capacity; and CLASS "A" VALET, INC., a corporation, | |
| Defendants. | |

Michael P. McReynolds and Michael F. Tello, TELLO LAW FIRM, for plaintiff.

Tracey N. Fussy, MINNEAPOLIS CITY ATTORNEY'S OFFICE, for defendant Richard Walker.

Amy L. Schwartz and Ralph V. Mitchell, Jr., LAPP, LIBRA, THOMSON, STOEBNER & PUSCH, CHTD., for defendant Class "A" Valet, Inc.

On July 4, 2010, plaintiff Wayne Newton was tasered by defendant Richard Walker, a Minneapolis police officer, while Walker was working off-duty as a security guard for a parking lot managed by defendant Class "A" Valet, Inc. ("Class A"). Newton filed this action against Walker and Class A. Against Walker, Newton brings claims of excessive force, false arrest, violation of substantive due process, assault, and battery. Newton also seeks to hold Class A liable under the doctrine of respondeat superior for assault and battery.[1]

This matter is before the Court on defendants' motions for summary judgment. For the reasons that follow, Class A's motion is granted, and Walker's motion is granted in part and denied in part.

---

[1] Newton originally pleaded constitutional claims against Class A, but at oral argument he confirmed that he is not pursuing those claims.

## I. BACKGROUND

Taking the record in the light most favorable to Newton, a jury could find the following facts:

At about 9:00 p.m. on July 4, 2010, Newton and a friend named Keller Knighten went to a restaurant in Minnetonka. Newton Dep. 39-40. The pair spent two hours at the restaurant, where Newton drank two rum and Cokes. Newton Dep. 40. At about 11:00 p.m., Newton and Knighten drove to Elixir, a downtown Minneapolis nightclub. Newton Dep. 40. They stayed at the nightclub until it closed at 2:00 a.m. Newton Dep. 42. During that time, Newton drank two diet Cokes and did not drink any alcohol. Newton Dep. 42. When they left the nightclub, Newton was acting normally and was neither drunk nor loud. Knighten Aff. ¶ 5.

After the nightclub closed, Newton and Knighten decided to walk to a nearby restaurant. Newton Dep. 44. Their route took them past a parking lot next to the nightclub. Newton Dep. 40, 44; Graves Dep. 34. Although the streets were full of people leaving the nightclub and other nearby bars, the crowd was calm and orderly. Newton Dep. 44, 47, 53. As they walked down the crowded sidewalk, Newton and Knighten saw Officer Walker in the parking lot. Newton Dep. 44; Knighten Aff. ¶ 5. Walker had his gun out of his holster and was shouting at people to get out of the parking lot. Knighten Aff. ¶ 5; Newton Dep. 44, 47. Newton heard someone in the crowd say, "He's got a gun," which Newton understood to be a reference to Walker. Newton Dep. 44-45, 47. Someone in the crowd yelled, "Why do you have your gun out? What's your badge number?" Newton Dep. 45, 47. Walker recited his badge number in response. Newton Dep. 45, 47.

When Newton and Knighten arrived at the restaurant, there was a long line of people waiting to get inside. Newton Dep. 47. Newton and Knighten decided not to wait, so they headed back to Newton's car, which took them past the parking lot again. Newton Dep. 47-48; Knighten Aff. ¶ 6. As they walked past the parking lot, Newton pointed at Walker and said to Knighten, "Look, he still has his gun out. Why does he need a gun to — why do you need a gun to control the crowd?" Newton Dep. 49; *see also* Knighten Aff. ¶ 7. Walker, who was close enough to hear Newton's remark, charged around the barrier between the parking lot and the sidewalk. Newton Dep. 49; Knighten Aff. ¶ 7.

As Walker approached Newton, Newton put up his hands and stepped back. Newton Dep. 49; Knighten Aff. ¶ 7. Walker fired the taser twice, and Newton fell to the ground. Newton Dep. 49; Knighten Aff. ¶ 7. Walker did not say a word to Newton before firing his taser. Newton Dep. 50. While on the ground, Newton shook and then became very still. Knighten Aff. ¶ 7. Knighten asked Walker, "Why did you do that?" and Walker replied "He knows why!" Knighten Aff. ¶ 7. A few minutes later, Newton was arrested, handcuffed, and placed in a squad car. Newton Dep. 51; Knighten Aff. ¶ 8. As a result of the tasering, Newton suffered excruciating pain, bruises, and a bleeding cut on his arm.[2] Newton Dep. 36-37, 51; Knighten Aff. ¶ 8. He later felt depressed, embarrassed, and humiliated by the incident. Newton Dep. 60, 62, 64.

---

[2]Throughout his motion for summary judgment, Walker improperly relies on facts that are contradicted by Newton's version of events. For example, Walker contends that, before Newton was tasered, Newton's shirt had bloodstains on it, suggesting that Newton had been in a violent altercation at some point earlier in the evening. Both Newton and Knighten attest, however, that Newton did not have any blood on his shirt until he was injured by the taser, Newton Dep. 51-52; Knighten Aff. ¶ 11, and Newton denies being in a fight that evening, Newton Dep. 52.

## II. ANALYSIS

### *A. Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### *B. Newton's Claims Against Walker*

Against Walker, Newton brings claims of excessive force, false arrest, and violation of substantive due process under the Fourth and Fourteenth Amendments, as well as common-law claims of assault and battery. The Court considers each claim in turn.

#### 1. Excessive Force

Walker argues that, because his tasering of Newton inflicted only de minimis injury, Walker is entitled to qualified immunity on Newton's excessive-force claim under *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011). In *Chambers*, the Eighth Circuit clarified that a plaintiff need not show more than de minimis injury in order to prevail on a claim of excessive force. *Id.* at 908-09. But because the Eighth Circuit's previous case law had not been clear on this point, the police officers who had been sued in *Chambers* were entitled to qualified immunity. *Id.* Walker argues that, because he tasered Newton before *Chambers* was decided,

and because he inflicted no more than de minimis injury on Walker, he, too, is entitled to qualified immunity. The Court disagrees.

The facts of this case are essentially indistinguishable from two other recent Eighth Circuit cases: *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009), and *Shekleton v. Eichenberger*, 677 F.3d 361 (8th Cir. 2012). In both *Brown* and *Shekleton*, an officer tasered a nonviolent, nonresisting plaintiff who was suspected of a minor crime. *Brown*, 574 F.3d at 496-97; *Shekleton*, 677 F.3d at 366. In both cases, the Eighth Circuit held that the officer was not entitled to qualified immunity:

> At the time Zarrett deployed his Taser and arrested Sandra, the law was sufficiently clear to inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator.

*Brown*, 574 F.3d at 499; *see also Shekleton*, 677 F.3d at 367 (noting that, in *Brown*, "we determined that the general law prohibiting excessive force in place at the time of the incident was sufficient to inform an officer that use of his taser on a nonfleeing, nonviolent suspected misdemeanant was unreasonable, even though we did not have a case specifically addressing officer taser use prior to the incident").

Like this case, both *Brown* and *Shekleton* involved incidents that occurred before the Eighth Circuit issued its decision in *Chambers*. *Brown*, 574 F.3d at 493; *Shekleton*, 677 F.3d at 363. Thus, a reasonable officer in Walker's position — like a reasonable officer in the position of the officers in *Brown* and *Shekleton* — should have known that tasering a nonviolent, nonresisting suspected misdemeanant violates the Fourth Amendment. Indeed, the Eighth

Circuit's decision in *Brown* predated Walker's tasering of Newton. Thus, it would have been *clearer* to a reasonable officer in Walker's position than it would have been to a reasonable officer in the position of the officer in *Brown* that tasering a nonviolent, nonresisting suspected misdemeanant violates the Fourth Amendment. Walker is not entitled to qualified immunity.

Walker nevertheless argues that *Brown* and *Shekleton* are distinguishable because the plaintiffs in those cases, unlike Newton in this case, suffered more than de minimis injury. Again, the Court disagrees. In neither *Brown* nor *Shekleton* did the Eighth Circuit even discuss whether the plaintiffs' injuries were de minimis, strongly suggesting that the issue was irrelevant — that is, that the Eighth Circuit viewed the tasering of a nonviolent, nonresisting suspected misdemeanant as unlawful in and of itself, regardless of the precise nature of the injury caused by the tasering. Alternatively, the Eighth Circuit may have assumed that anyone who suffers the excruciating pain of being tasered has, by definition, suffered more than a de minimis injury. In any event, the injuries suffered by Newton — including extreme pain, bruises, a bleeding cut, and feelings of depression, embarrassment, and humiliation — are not materially distinguishable from the injuries suffered by the plaintiffs in *Brown* and *Shekleton*. *Cf. Brown*, 574 F.3d at 495 (plaintiff suffered extreme pain, bruises, red welts, and anxiety with physical manifestations, including loss of sleep); *Shekleton*, 677 F.3d at 365 (plaintiff suffered "minor head injuries" after falling face-first to the ground).

Walker also compares this case to *Cook v. City of Bella Villa*, 582 F.3d 840 (8th Cir. 2009), in which the Eighth Circuit held that an officer's use of a taser was protected by qualified immunity. In so holding, the majority did not appear to rely on any requirement that a plaintiff prove more than a de minimis injury; indeed, the majority noted that it was an *open question*

whether some minimum level of injury was required. *Id.* at 850. Moreover, the *Cook* majority seemed to go out of its way to avoid expressing an opinion about whether the tasered plaintiff's injuries were or were not de minimis. The majority's reticence was notable because the dissent expressly stated that the pain and puncture marks that accompany a tasering are *not* de minimis, and are sufficient to meet any minimum-injury requirement. *Id.* at 860 (Shepherd, J., concurring in part and dissenting in part). Despite this clear invitation to clarify whether such injuries are de minimis, the majority noted only that "the lack, or minor degree, of any injury sustained during an arrest is relevant in considering the reasonableness of the force used." *Id.* at 850. The majority said not a word in disagreement with the dissent's assertion that a taser "inflicts a painful and frightening blow." *Id.* at 860 (Shepherd, J., concurring in part and dissenting in part). Instead, the majority essentially changed the subject, emphasizing that, under the circumstances, the arresting officer reasonably perceived a threat to his safety. *Id.* at 850-51. The Court therefore does not read *Cook* to hold that injuries from a taser are de minimis as a matter of law, particularly because such a reading would be inconsistent with the results in *Brown* and *Shekleton*.[3] Walker's motion for summary judgment is therefore denied as to Newton's excessive-force claim.

---

[3]The Court notes that judges in this District have taken differing views of *Cook*. *Compare Orsak v. Metro. Airports Comm'n Airport Police Dep't*, 675 F. Supp. 2d 944, 958 n.7 (D. Minn. 2009) ("*Cook* did not hold that the injury associated with a taser is *de minimis*. Rather, the court balanced the *Graham* factors with the extent of the force used and held that the officer had a 'legitimate reason' to deploy the taser.") *with McClennon v. Kipke*, 821 F. Supp. 2d 1101, 1107 (D. Minn. 2011) (citing *Cook* for the proposition that "the Eighth Circuit has held that in the absence of evidence of long-term effects, the use of a Taser does 'not inflict any serious injury.'" (quoting *Cook*)). The Court agrees with *Orsak*'s reading of *Cook*, and respectfully disagrees with *McClennon*'s.

## 2. False Arrest

An officer who arrests a suspect without probable cause is entitled to qualified immunity if he had an objectively reasonable, albeit mistaken, belief that probable cause existed. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010). Given Newton's version of the facts — under which Newton was calmly walking down a public sidewalk and merely made a comment to a friend while pointing at Walker — the Court is at a loss to imagine how Walker could reasonably have believed that he had probable cause to arrest Newton. At oral argument, Walker (eventually) agreed with the Court that, under Newton's version of the facts, there was no arguable probable cause to arrest Newton.

Walker nevertheless insists that he is entitled to summary judgment because Newton's version of the facts is inherently incredible and contradicted by the record. The Court disagrees. Certain aspects of Newton's story are indeed hard to believe, but the same can be said of certain aspects of the stories told by many parties at many trials. Walker's false-arrest claim turns on a garden-variety dispute of fact that must be resolved by a jury. Walker's motion for summary judgment on Newton's false-arrest claim is therefore denied.

## 3. Substantive Due Process

The Supreme Court has long held that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific

constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Because all of Walker's claims arise out of his arrest, Walker must rely on the Fourth Amendment rather than on substantive due process. The Court therefore grants Walker's motion for summary judgment on Newton's substantive-due-process claim.

4. Assault and Battery

Newton also brings common-law claims of assault and battery against Walker. As Walker conceded at oral argument, the official-immunity analysis under which he seeks summary judgment on the state claims essentially duplicates the qualified-immunity analysis under which he seeks summary judgment on the federal excessive-force claim. Because the Court concludes that Walker is not entitled to qualified immunity on Newton's excessive-force claim, the Court also concludes that Walker is not entitled to official immunity on Newton's assault and battery claims.

C. Newton's Claims Against Class A

As noted, Newton's only claim against Class A is that it should be held liable under the doctrine of respondeat superior for the assault and battery committed by Walker. This claim fails for two reasons:

*First*, Walker was acting as a police officer rather than as a private security guard when he tasered Newton, which means that Class A cannot be held vicariously liable for the tasering. *See Graalum v. Radisson Ramp, Inc.*, 71 N.W.2d 904, 907 (Minn. 1955) ("Private persons will be relieved from liability for the acts of commissioned police officers when performed in their official capacity although private persons paid such officers for services in and about the private

-9-

employer's property."); *Green v. BCE Dev. Props., Inc.*, No. C2-96-1892, 1997 WL 161832, at *2 (Minn. Ct. App. Apr. 8, 1997) ("A private entity is not liable for the acts of police officers acting in their official capacity, even though the entity pays such officers to perform private services." (citing *Graalum*)).

Here, the undisputed evidence before the Court is that, at the request of the Minneapolis Police Department ("MPD"), Class A hires off-duty police officers on certain nights of the week to monitor its parking lot at bar-closing time. Graves Aff. ¶ 3. Class A does not provide the officers with uniforms, equipment, or weapons to perform the security work. Graves Aff. ¶ 4. Instead, the MPD requires off-duty officers working as security guards to wear their police uniforms and to follow the policies and procedures of the MPD. Walker Dep. 30. Class A does not choose or schedule individual off-duty officers; instead, the officers are selected and scheduled by the MPD. Graves Aff. ¶ 6. Class A does not provide any training to the police officers or policies for the officers to follow; the officers are trained by the MPD and, as noted, follow the polices of the MPD. Graves Dep. 52-53. At most, Walker received occasional instructions from parking-lot attendants regarding when to clear the parking lot. Walker Dep. 151-52. If a situation arises in which police are needed elsewhere, officers are expected to leave their off-duty stations to assist. Walker Dep. 147-48.

With respect to the specific incident at issue in this case, there is no dispute that Walker tasered and arrested Newton on a public sidewalk — not in Class A's parking lot — and that Newton was not trying to get into the parking lot when he was tasered. Walker Dep. 148. When Walker was finished with his shift at the parking lot, he went to City Hall and filled out a police report on the incident; he was paid by the MPD (not Class A) for the time he spent filling out that

report. Walker Dep. 44-45, 58-59. Given these facts, a reasonable jury would have to conclude that Walker was acting in his official capacity as a police officer when he tasered Newton.

*Second*, even if Walker was acting as a private security guard rather than as a police officer, Walker was an independent contractor and not an employee of Class A (as Newton conceded at oral argument). Generally speaking, an employer of an independent contractor cannot be held vicariously liable for the contractor's acts or omissions. *Conover v. N. States Power Co.*, 313 N.W.2d 397, 403 (Minn. 1981) ("The general rule, given in section 409 of the Restatement (Second), is that 'the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.'"). If, however, an employer of an independent contractor retains detailed control over the work of the contractor and then fails to act reasonably in exercising that control, the employer can be held liable for its own negligence. *See Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 189 (Minn. 2005) ("an employer of an independent contractor may be found negligent when it retains detailed control over a project and then fails to exercise reasonably careful supervision over that project"); *Musse v. Engle*, No. A07-0725, 2008 WL 2020444, at *7-8 (Minn. Ct. App. May 13, 2008) (same). Under the undisputed facts discussed above, however, no reasonable jury could find that Class A retained detailed control over Walker; indeed, Class A had less control over Walker than, say, a typical homeowner has over a typical plumber hired to fix a leaky faucet. For that reason, Class A cannot be held liable for Walker's decision to taser Newton, even if Walker was acting as a private security guard rather than as a police officer. Class A's motion for summary judgment is therefore granted.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Richard Walker's motion for summary judgment [ECF No. 16] is GRANTED IN PART and DENIED IN PART.

2. Walker's motion is GRANTED as to plaintiff's substantive-due-process claim, and that claim is DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. Walker's motion is DENIED in all other respects.

4. Defendant Class "A" Valet, Inc.'s motion for summary judgment [ECF No. 22] is GRANTED. All claims against Class "A" Valet, Inc. are DISMISSED WITH PREJUDICE AND ON THE MERITS.

Dated: October 12, 2012

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge